0477

James Robert JAMISON, Respondent, v. Patricia Turney JAMISON, James Leslie Elliott and Kelly Dylan Elliot, a minor under the age of fourteen years, of whom James Leslie Elliott is the Appellant. Appeal of James Leslie ELLIOTT.

(330 S. E. (2d) 671)

Court of Appeals

*Michael D. Keys,* Greenville, *for appellant.*

*M. Leonard Ledford,* Greenville, *for respondent.*

*Ronald Friddle,* Greenville, *guardian ad litem for the minor: Kelly Dylan Elliott.*

Heard March 20, 1985.

Decided May 21, 1985.

SANDERS, Chief Judge:

Respondent James Robert Jamison brought this action to adopt his stepson, Kelly Dylan Elliott. Appellant James Leslie Elliott is the biological father of the child. Respondent Patricia Turney Jamison is the biological mother of the child. She was formerly married to Mr. Elliott and is now married to Mr. Jamison. The trial judge terminated the parental rights of Mr. Elliott and granted the adoption. We affirm.

Mr. Elliott and Ms. Jamison were married in December 1973, the same month and year the child Kelly was born in New Orleans. Soon after Kelly was born, Mr. Elliott and Ms. Jamison permanently separated. Ms. Jamison and Kelly moved to Greenville, South Carolina where they lived with Ms. Jamison's father, who had paid all of the hospital costs attendant to the birth of Kelly. Mr. Elliott and Ms. Jamison never lived together once she and Kelly moved to Greenville.

Either shortly before or soon after their separation, Mr. Elliott became involved with drugs, was shot by a policeman, and was rendered a paraplegic. Between 1974 and 1982, he lived in South Carolina, Louisiana, Indiana and

Missouri. He was hospitalized on numerous occasions for treatment of serious medical problems but had periods of relative wellness. In 1975 and 1976, Ms. Jamison and Kelly traveled from Greenville to New Orleans to visit Mr. Elliott when he was gravely ill.

In 1978, Mr. Elliott came to Greenville, called Ms. Jamison at her father's home and arranged to see Kelly. Ms. Jamison and her sister took Kelly to a meeting point away from her home for this purpose. Mr. Elliott testifed that Ms. Jamison threatened to have him arrested if he came to her home. The visit was brief. Ms. Jamison attributed its brevity to the fact that Mr. Elliott was interested in talking to her but she had nothing to say to him. Her sister testified that during the visit Mr. Elliott devoted most of his attention to Ms. Jamison, not Kelly.

On September 1978, Mr. Elliott and Ms. Jamison were divorced on the grounds of desertion for one year and separation for three years. The divorce was uncontested. Mr. and Mrs. Jamison were married the following year. They have lived together with Kelly as a family ever since.

Mr. Elliott testifed that he mailed numerous letters to Ms. Jamison and Kelly, including a letter dated July 18, 1981. Ms. Jamison testified that after Mr. Elliott's visit in 1978, his only communication with her was the July 18, 1981 letter which read in part:

> I have written and rewritten this letter many times in the last three years. *Each time I tore it up. I could never send it. . . .*
>
> I have no desire to meddle in your lives as I threw that right away years ago . . . I have been accepted into a school to learn computer programming. School starts September 14th. [sic] and I am looking forward to it. (Emphasis added.)

Mr. Elliott graduated from computer programming school in June 1982, the same month Mr. Jamison instituted this action for termination of his parental rights and adoption of Kelly.

During the six month period prior to the institution of this action, Mr. Elliott neither visited Kelly nor did he make any payments toward his support. Although his mobility

and income were limited during this period, Mr. Elliott was able to live by himself, attend classes, and be interviewed by prospective employers. He received $284 monthly as supplemental security income and his housing was subsidized by the government. He made no effort to arrange for Kelly to receive SSI benefits as the dependent of a disabled person.

The trial judge terminated Mr. Elliott's parental rights based on a finding that he had abandoned Kelly. Mr. Elliott argues that the order of the trial judge should be reversed because the judge did not explicitly find that his abandonment of Kelly was willful. He further argues that the evidence does not support such a finding. We reject both arguments.

Section 20-7-1570(1), 1976 Code of Laws of South Carolina, as amended, (which was the applicable law at the time of the trial) defines an "abandoned child" as:

A child whose parents have willfully failed to visit or have willfully failed to support or make payments toward his support for six consecutive months immediately preceding institution of an action or proceeding to declare the child to be an abandoned child. . . .

The willful failure to provide even minimum support alone is sufficient to satisfy the definition of an "abandoned child" provided by Section 20-7-1570(1). *Chambers, et al. v. Anderson County Department of Social Services,* 280 S. C. 209, 311 S. E. (2d) 746 (Ct. App. 1984). Section 20-7-1590 (which was also applicable at the time of the trial) provides:

If the court shall determine after the hearing that the child concerned, either voluntarily or through neglect, has been abandoned for a period in excess of six months or severely abused, it may issue an order forever terminating parental or guardianship rights to such child, award custody to such person or agency as it deems proper and the child shall be eligible for adoption.

The United States Supreme Court has recently held that clear and convincing evidence is necessary to accord a parent due process in terminating his parental rights. *Santosky v. Kramer,* 455 U. S. 745, 102 S. Ct. 1388, 71 L. Ed. (2d) 599 (1982). Our Supreme Court later applied

this same test in *Richberg v. Dawson*, 278 S. C. 356, 296 S. E. (2d) 338 (1982). However, reversal is not necessarily required where it does not appear that the trial judge applied this test in terminating parental rights. The order of the trial judge may be affirmed if the appellate court can review the record and find clear and convincing evidence supporting termination. *South Carolina Department of Social Services v. Martell*, 279 S. C. 289, 307 S. E. (2d) 601 (1983).

In our opinion, the evidence here is clear and convincing that Mr. Elliott abandoned his child. It is undisputed that he failed to visit the child during the six month period prior to the institution of this action. It is likewise undisputed that he failed to make payments toward the support of his child during this period. Even taking into account his disability and limited income, we find that he could have made some effort to visit his child and could have made some payments toward his support. The evidence does not support a finding that Ms. Jamison prevented Mr. Elliott from visiting the child or making payments toward his support. Therefore, we find that his failure to do so was willful.

In view of our findings on these points, it is of no consequence that the trial judge did not explicitly find the abandonment by Mr. Elliott of his child was willful.

For these reasons, the order of the Family Court is

Affirmed

SHAW and BELL, JJ., concur.